UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHAEL HINTON,        )
                              )
        Plaintiff,      )
                              )     1:09-cv-00554-JAW
      v.                 )
                              )
OUTBOARD MARINE     )
CORPORATION,         )
                              )
        Defendant.    )

## ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS

A recreational boat manufacturer moves for judgment on the pleadings, claiming a personal injury Plaintiff's causes of action are time-barred. The Court denies the motion because in response, the Plaintiff presented sufficient contested facts to preclude judgment. Further, if the contested facts are viewed in the light most favorable to the Plaintiff, the Defendant received sufficient notice of the action to allow the Plaintiff's amended complaint to relate back to a period before the expiration of the statute of limitations.

## I.    STATEMENT OF FACTS

### A.    Procedural History[1]

James Hinton filed a complaint in Maine Superior Court, Waldo County, on July 18, 2003 involving an accident that took place on September 10, 2000. *Aff. of*

---

[1] The Maine Superior Court did not provide this Court with certified records of the state court proceedings. Accordingly, the Court ordered that counsel for the removing party, OMC Recreational Boat Group, Inc., file a complete copy of the state court record of this case (duplicate record) along with an affidavit representing that the duplicate record is complete and accurate. *Procedural Order Re Removal* (Docket # 5). OMC Recreational Boat Group, Inc. filed that duplicate record on November, 10, 2009. *State Court Record* (Docket # 6). The Court relies primarily on that duplicate record in reconstructing the procedural history prior to removal to this Court.

*Phillip S. Bixby* at Attach. 1 (Docket #6), *State Ct. R.* The Complaint named as defendants Christopher Sprague of Augusta, Maine, and three Jane Does: a boat ladder manufacturer, a water-craft manufacturer, and a water-craft seller. *Notice of Removal* at Attach. 10 (Docket # 1), *Initial Compl.* ¶¶ 2-5. On September 9, 2003, Mr. Hinton filed a First Amended Complaint, naming as defendants Four Winns, Inc.; OMC, Inc.; and, Four Winns Boats, L.L.C., among others. *Aff. Of Phillip S. Bixby* at Attach. 5; *First Am. Compl.* ¶¶ 2-4. On October 15, 2003, Mr. Hinton dismissed his claims against several defendants, including Four Winns Boats, L.L.C. *State. Ct. R.* at 3-5. In the next several months, Mr. Hinton twice requested enlargements of time to file service of process, citing his inability after a good faith effort to serve a summons and complaint upon OMC, Inc. *Aff. Of Phillip S. Bixby* at Attach. 12, *Pl.'s Mot. for Extension of Time to File Return of Service*; *Aff. Of Phillip S. Bixby* at Attach. 14, *Pl.'s Second Mot. for Extension of Time to File Return of Service*. On December 18, 2003 and February 23, 2004, the Maine Superior Court granted the motions, ultimately giving Mr. Hinton until April 8, 2004 to file return of service on OMC, Inc. *Aff. Of Phillip S. Bixby* at Attach. 13, *First Order on Mot. for Extension of Time to File Return of Service*; *Aff. Of Phillip S. Bixby* at Attach. 16, *Second Order on Mot. for Extension of Time to File Return of Service*. According to the State Court Record, on March 12, 2004, Mr. Hinton served Outboard Marine Corporation (Outboard Marine) with a civil summons by certified

mail.  *State Court Record* at 3.[2]  This civil summons was filed on March 18, 2004.  *Id.*

On May 3, 2004, Mr. Hinton requested an enlargement of time to file service of process on Four Winns, Inc.  *Pl.'s Mot for Extension of Time to Serve Party Def. Four Winns, Inc.* Attach 18 (Docket #6).  From that date, until February 4, 2009, the State Court Record is sparse and unclear.  *See State Ct. R.* at 3-5.  It appears that the Maine Superior Court granted Mr. Hinton's request for an enlargement of time to file service of process on Four Winns, Inc. on August 3, 2004, but dismissed the action against Four Winns, Inc. on August 16, 2004.[3]  *Id.* at 4.  On August 16, 2004, Outboard Marine filed a suggestion of bankruptcy.[4]  *Id.*

No further activity relevant to this motion took place until February 2, 2009, when Mr. Hinton moved to amend his complaint, saying that "[u]pon attempting to obtain service on Defendants Four Winns, Inc. and OMC, Inc., Plaintiff's counsel was provided information that the correct corporate name of OMC, Inc. is Outboard Marine Corporation, and that Four Winns was a division of Outboard Marine Corporation, which was in bankruptcy proceedings."  *Aff. Of Phillip S. Bixby* at Attach. 24, *Pl.'s Motion for Leave to Am. Compl.*  Mr. Hinton explained that he had obtained relief from the automatic stay in the Outboard Marine bankruptcy case

---

[2] Even though the Record reflects that this service took place, the parties do not agree it did.

[3] OMC Recreational Boat Group, Inc. attached no orders to this effect.  The Court gathers this fact from the listing in the State Court Record.

[4] Outboard Marine provides details concerning the procedural history of its bankruptcy and its relation to this litigation in its Motion for Judgment on the Pleadings.  Since those details are not reflected in the State Court Record and are not supported by documentation in Outboard Marine's Motion, the Court will defer discussion of them until reviewing Outboard Marine's arguments.

and that his amended complaint would "assert claims only against the single defendant which is properly identified as Outboard Marine Corporation" *Id.* at 1. The Maine Superior Court granted the motion on March 26, 2009. *Aff. Of Phillip S. Bixby* at Attach. 26. Outboard Marine's bankruptcy trustee accepted service of the Second Amended Complaint on May 7, 2009, and Mr. Hinton filed the acceptance of service on May 13, 2009. *State Ct. R.* at 5; *Def.'s Mot.* at 3.

On October 9, 2009, the Maine Superior Court granted Mr. Hinton's motion to file a Third Amended Complaint, which added OMC Recreational Boat Group, Inc. as a defendant and asserted that "Outboard Marine Corporation and/or OMC Recreational Boat Group, Inc. were engaged in the manufacture and marketing of Four Winns brand boats." *Aff. Of Phillip S. Bixby* at Attach. 41, *Third Am. Compl.*; *Aff. of Phillip S. Bixby* at Attach. 49, *Order Granting Pl.'s Mot. for Leave to Amend Compl.*

On October 30, 2009, OMC Recreational Boat Group Inc. removed the action to this Court. *Notice of Removal* (Docket # 1). On July 23, 2010, Outboard Marine filed a Motion for Judgment on the Pleadings. *Mot. for J. on Pleadings* (Docket # 26) at 11 (*Def.'s Mot.*). On August 11, 2010, Mr. Hinton filed a Response. *Pl's Resp. to Def.'s Mot. for J. on the Pleadings* (Docket # 28) (*Pl.'s Resp.*). On August 25, 2010, Outboard Marine filed a Reply. *Def.'s Reply to Pl.'s Resp. to Def.'s Mot for J. on the Pleadings* (Docket # 29) (*Def.'s Reply*). On October 8, 2010, Mr. Hinton filed a sur-reply. *Pl.'s Surreply in Resp. to Def.'s Mot. for J. on the Pleadings* (Docket #34) (*Pl.'s Sur-reply*). Oral argument was held on December 20, 2010.

### B.    Legal Contentions

#### 1.    Outboard Marine's Motion

Outboard Marine moves for judgment on the pleadings under Rule 12(c) on the grounds that the statute of limitations has run on each of Mr. Hinton's claims. FED. R. CIV. P. 12(c).  Outboard Marine argues that the first and third counts in the Third Amended Complaint are subject to a three year statute of limitations and the second count is subject to a six year statute of limitations.  *Def.'s Mot.* at 5.

Turning to the three-year statute of limitations, Count I alleges strict liability and Count III alleges negligence.  According to Outboard Marine, both counts "are subject to the three year maritime statute of limitations for personal injury arising from a maritime tort under [46] U.S.C. § 30106."[5]  *Id.* at 5.  Outboard Marine argues that § 30106 applies to Mr. Hinton's tort claims since they involve a recreational boat and the accident occurred on navigable waters.  *Id.* 6-7.  Outboard Marine acknowledges that federal power over such matters is not exclusive, as the "savings-to-suitors clause" of 28 U.S.C. § 1333 allows state courts to entertain maritime causes of action.  *Id.* at 6.  Nevertheless, Outboard Marine contends that, even when such an action is brought in state court, that court must apply substantive federal maritime law and Outboard Marine argues "there is no question 46 U.S.C. § 30106 is the applicable limitation period for . . . Counts I and III."  *Id.* at 7.

---

[5] In its motion, Outboard Marine repeatedly cites 42 U.S.C. § 30106; Outboard Marine must mean 46 U.S.C. § 30106.

Outboard Marine quotes § 30106: "[e]xcept as otherwise provided by law, a civil action for damages for personal injury or death arising out of a maritime tort must be brought within 3 years after the cause of action arose." *Id.* at 6. Outboard Marine asserts that the cause of action accrued on September 10, 2000, so the three year statute of limitations on Counts I and III ran on September 10, 2003. Outboard Marine says that Mr. Hinton did not assert a cause of action against it until January 30, 2009, when it moved to amend the complaint to add Outboard Marine as a defendant. *Id.* at 2-3. Outboard Marine thus contends that Mr. Hinton's strict liability and negligence claims have been long since barred by the three-year statute of limitations. *Id.* at 5-7.

Count II of the Third Amended Complaint asserts a claim for breach of implied warranty of merchantability. Outboard Marine asserts that this cause of action is covered by Maine's Uniform Commercial Code. Specifically, it says that 11 M.R.S. § 2-725(2) supplies the limitation period for a claim for breach of implied warranty of merchantability by incorporating 14 M.R.S. § 752. *See id.* at 7. Outboard Marine states that "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, except actions on a judgment or decree of any court of record of the United States, or of any state, or of a justice of the peace in this State, and except as otherwise specifically provided." *Id.* (citing 14 M.R.S. § 752). Outboard Marine argues that the statute of limitations ran on Count II of Mr. Hinton's Third Amended Complaint on September 10, 2006 and that since

Mr. Hinton did not assert a claim against Outboard Marine until January 30, 2009, his claim against Outboard Marine is barred by the six year statute of limitations.

Finally, Outboard Marine argues that Mr. Hinton is time-barred under another statutory provision. After the cause of action accrued, Outboard Marine filed for bankruptcy and during the bankruptcy, Outboard Marine says, the statute of limitations lapsed. Because Mr. Hinton did not file his claim within the extended limitations period provided by 11 U.S.C. § 108(c)(2) for defendants in bankruptcy proceedings. Outboard Marine acknowledges that its bankruptcy filing triggered the automatic stay provision of the Bankruptcy Code, and it concedes that the automatic stay prevented Mr. Hinton from commencing an action against Outboard Marine without first obtaining relief from the stay in the bankruptcy court pursuant to 11 U.S.C. § 108(c).

According to Outboard Marine, "if the statute of limitations governing a plaintiff's claim expires against a debtor during the pendency of the stay, the plaintiff has 30 days to re-file the action from the time she receives notice that the Bankruptcy Court has ordered the stay lifted." *Def.'s Mot.* at 9. Outboard Marine cites *Aslandis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1073 (2nd Cir. 1993), which affirmed a district court's granting of summary judgment against a plaintiff who filed a personal injury tort complaint after the statute of limitations had run and 58 days after notice of an order lifting the automatic stay in the defendant's bankruptcy proceeding. *Id.* Outboard Marine argues that "108(c) does not provide for tolling of any externally imposed time bars . . . . The bankruptcy section only calls for

applicable time deadlines to be extended by 30 days after notice of the termination of the bankruptcy stay." *Def.'s Mot.* at 9-10 (quoting *Aslandis,* 7 F.3d at 1073).

Outboard Marine argues that 11 U.S.C. § 108(c) does not save Mr. Hinton's claim because he failed to file his Third Amended Complaint within 30 days of the lifting of the automatic stay. The Bankruptcy Court granted relief from the automatic stay on June 19, 2008.[6] Mr. Hinton waited "two hundred and twenty five (225) days after [he] had notice of the order lifting the stay, to file [his] Motion for Leave to Amend the Complaint to add Outboard Marine Corporation as a Defendant." *Id.* at 10. Outboard Marine argues that this was "well past the 30 day opportunity," and "by this time all statute of limitations, and years of extensions, had run." *Id.* at 11.

## 2. Michael Hinton's Response

In response, Mr. Hinton asserted additional facts relating to the procedural history of this case that are relevant to his legal arguments. First, he described the difficulty he had finding the proper defendants. *Pl.'s Resp.* at 1-3. He noted that the initial Complaint named three Jane Doe defendants because he had not ascertained the proper defendants. *Id.* at 1. After filing his First Amended Complaint, which named OMC, Inc. and others as defendants, he "obtained service on OMC, Inc.'s registered agent in Delaware on September 12, 2003." *Id.* at 1-2. However, the registered agent explained that there were several entities whose

---

[6] Outboard Marine's Motion for Judgment on the Pleadings refers to two dates for the granting of this relief: June 6, 2008, *Def.'s Mot.* at 10, and June 19, 2008, *id.* at 2. At oral argument, Outboard Marine clarified that the relief was granted on June 19, 2008.

names began with OMC, so Mr. Hinton sought and received extensions of time to effect service on OMC and he was given until April 8, 2004. *Id.* at 2. Mr. Hinton argues that on March 8, 2004 he "effected service by certified mail on 'Robert S. Romano, Secretary, Outboard Marine Corp., 100 Sea-Horse Drive, Waukegan, IO (sic) 60085.'" *Id.* at 2 (alteration in original). "The return receipt for that certified mail was signed by Terry Ellis as received on March 19, 2004." *Id.* (citing Ex. D (Docket # 28)).

Mr. Hinton notes that he similarly moved for an extension of time to serve Four Winns, Inc. *Id.* While acknowledging that the Maine Superior Court does not appear to have acted on the motion, Mr. Hinton argues that he "effected service by certified mail on 'T.J. Taylor, Vice-President, Four Winns, Inc., 100 Sea-Horse Drive, Waukegan, IL 60085.'" *Id.* He attaches the return receipt for that certified mail, which says it was signed by Terry Ellis as received on June 18, 2004." *Id.* (citing Ex. E. (Docket #28)).

Mr. Hinton says that on July 24, 2004, he received an email from Attorney Kathleen Klaus of Shaw, Gussis, Fishman, Glantz, Wolfson & Towbin, LLC stating:

> We are the attorneys for Alex Moglia, chapter 7 trustee for Outboard Marine Corporation and its related debtor entities ("OMC"). We have received the subpoena served on T.J. Taylor, Vice-President of Four Winns. Please note that Four Winns, a division of OMC, has been in bankruptcy since December 22, 2000. Any further effort to pursue this matter without leave of court constitutes a violation of the automatic stay. We suggest you either drop the case or get relief from the stay to pursue your client's case.

*Id.* at 3 (citing *Id.* at Ex. F). "In response to that email, Mr. Hinton's counsel began exploring the possibility of insurance coverage for OMC and/or Four Winns." *Id.* Upon discovering an insurance policy issued to "Outboard Marine Corporation," Mr. Hinton says he sought to have Outboard Marine Corporation's automatic stay lifted to pursue his claim to the extent of insurance coverage. After the stay was lifted, Mr. Hinton notes that he moved to amend his complaint in January 2009 merely "to correct a misnomer by naming Outboard Marine Corporation in place of the previously named defendant, OMC, Inc." *Id.* (citing *State. Ct. R.* at Attach 24, *Pl.'s Motion for Leave to Am. Compl.* at 1).

Mr. Hinton argues that Rule 15(c)(1) saves his cause of action because his Second Amended Complaint relates back to his First Amended Complaint. *Id.* at 3-4 (citing FED. R. CIV. P. 15(c)(1)). Citing Rule 15, Mr. Hinton argues that his First Amended Complaint provided Outboard Marine with sufficient notice of the cause of action that his Second Amended Complaint relates back to the First Amended Complaint. *Pl.'s Resp.* at 4-5. He contends that because the First Amended Complaint was filed within the three year statute of limitations, the Second Amended Complaint is equally timely. *Id.*

Mr. Hinton provides additional facts to support his assertion that Rule 15's notice requirement is met. Noting that the First Amended Complaint naming OMC, Inc. as a defendant was filed on September 9, 2003, he "does not know whether Outboard Marine Corporation received notice via the service on the Delaware registered agent on September 12, 2003" but the deadline for service "was

10

extended by the court for good cause shown, to April 8, 2004." *Pl.'s Resp.* at 4-5. He asserts that Terry Ellis's March 19, 2004 return receipt for the certified mail sent to "Robert S. Romano, Secretary, Outboard Marine Corp." demonstrates Outboard Marine had notice before April 8, 2004. Furthermore, he notes that "[b]y July 2004, counsel for Outboard Marine Corporation's bankruptcy trustee acknowledged receipt of notice of the claim against OMC, Inc. and Four Winns, Inc." *Id.* at 5. Mr. Hinton argues that, because Outboard Marine had notice of the action within the period required by Rule 15, the Second Amended Complaint relates back to the date of the First Amended Complaint.

### 3.    Outboard Marine's Reply

Outboard Marine's Reply to Mr. Hinton's Response addresses "only those assertions by Plaintiff pertinent to Plaintiff's sole argument that 'Outboard Marine Corporation had notice of the suit and the fact that, but for a mistake concerning the correct corporate entity; the suit would have been brought against it.'" *Def.'s Reply* at 2.

Outboard Marine argues that Maine, not federal, relation back doctrine should apply. It notes that Maine Rule 15(c) provides Maine's relation back doctrine and says that an amended pleading joining a new party relates back to the date of the original pleading when three conditions are met:

> (1) the claim alleged in the amended pleading arises out of the . . . occurrence that forms the basis for the original pleading; (2) within the time allowed for service of the summons and complaint [90 days after filing], the prospective new party "has received such notice of the

institution of the action, . . .[7] and (3) within the same time prescribed by rule 3, the prospective new party "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against" that party.

*Id.* at 3 (citing *Batchelder v. Realty Resources Hospitality-Auburn LLC,* No. Civ.A. CV-03-232, 2004 WL 1599319, at *2 (Me. Super. June 24, 2004)).  Outboard Marine argues that it did not, within the time prescribed by Rule 3, receive actual notice of the institution of the action; it further contends that it did not know nor should it have known that but for a mistake concerning the identity of the proper party, the action would have been brought against it.

Outboard Marine disputes Mr. Hinton's assertions that it received notice.  It says OMC, Inc. never existed as an entity and could not have had a registered agent to receive service on September 12, 2003.  It cites Plaintiff's own Exhibit D, which states that "two prior attempts at service upon OMC's registered agent in Delaware failed, as process was not accepted by agent."  *Id.* at 6 (citing *Id.* at Ex. D).  Furthermore, Outboard Marine argues that even if OMC, Inc. existed as an alter ego, Outboard Marine had "long since filed for Chapter 7 bankruptcy, eliminating any such agency or any such authority to accept service upon it due to the automatic stay provision of the bankruptcy code."  *Id.*

---

[7] Outboard Marine's quote of *Batchelder* omits a portion of the second prong in a way that suggests that notice must be accomplished through service of a summons and complaint.  The full quote from *Batchelder* includes the entire second prong: "(2) within the time allowed for service of the summons and complaint under M.R.Civ.P. 3, the prospective new party has 'received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits.'"  *Batchelder v. Realty Resources Hospitality-Auburn LLC,* No. Civ.A. CV-03-232, 2004 WL 1599319, at *2 (Me. Super. June 24, 2004).  Outboard Marine's omitted language is significant in this case because it clarifies the nature of the notice required for relation back in Maine and confirms the Maine Rule's consistency with Federal Rule 15.

Outboard Marine denies that it received notice by certified mail on March 19, 2004, asserting that, by December 10, 2002, Outboard Marine had abandoned the property to which the certified mail was purportedly addressed. *Id.* Outboard Marine contends that service was ineffective under Maine law and could not have provided the required notice. *Id.* at 6 n.6. It argues that, under the Maine Rules of Civil Procedure, personal service outside the state must be made "by any person authorized to serve civil process by the laws of the place of service"—in this case, Illinois, *id.* (citing ME. R. CIV. P. 4(e)), and that service by certified mail was ineffective because service was not made "by a sheriff, . . . or a coroner of some county of the State" of Illinois, pursuant to Illinois law. *Id.* (citing 735 ILCS 5/2-202(a) (2003)).

Outboard Marine also contests Mr. Hinton's assertion that the July 26, 2004 email from Outboard Marine's bankruptcy trustee is evidence that Outboard Marine had notice of the claim. *Id.* at 7. Outboard Marine observes that the email referred to a subpoena, not a summons and complaint. *Id.* at 7. Further, "assuming this subpoena . . . can be converted into a summons and complaint," they note that "the earliest date [Mr. Hinton] could use to show notice is June 10, 2004, the date the clerk issued the summons"—two months after the April 8, 2004, deadline. *Id.* at 7.

Finally, Outboard Marine argues that it would be prejudiced if required to maintain a defense on the merits. Observing that it is now ten years since the incident took place, it says that "memories have long since faded." *Id.*

Furthermore, it contends that "copious documents have been destroyed pursuant to a Bankruptcy Court Order." *Id.* (citing *Id.* at Ex. D).

### 4. Mr. Hinton's Surreply

Mr. Hinton begins his reply to Outboard Marine's response by arguing which relation back law should apply. He contends that Federal Rule 15 provides that "an amendment to a pleading relates back to the date of the original pleading 'when the law that provides the applicable statute of limitations allows relation back.'" *Pl.'s Sur-reply* at 1 (quoting Fed. R. Civ. P. 15(c)(1)). "Here the laws that provide the applicable limitations are both federal maritime laws and state laws." *Id.* Furthermore, Mr. Hinton argues that Maine and federal relation back rules are nearly identical and render the same outcome. *Id.*

Mr. Hinton then argues that notice was effective under either relation back rule. He contends that both rules "require notice to the prospective defendant within the time for service of the summons and complaint, not within the statute of limitations," and that the rules "include[] not only the time for service specified in the Rules but also any additional time resulting from any extensions ordered by the court." *Id.* From there he reasons that April 8, 2004, "the time for summons and complaint, as extended by orders of the Superior Court," is the operative date by which Outboard Marine must have received notice. *Id.*

Mr. Hinton asserts that Outboard Marine had notice by April 8, 2004.[8]  *Id.*
He emphasizes that the rules require notice, not actual service, within the
applicable time period.  *Id.*  He claims that Outboard Marine knew litigation had
been commenced against it "no later than March 19, 2004, when it received the
certified mailing of the complaint and had Terry Ellis sign for it."  *Id.*

Finally, Mr. Hinton contends that the Court "need only extend its inquiry to
the pleadings and any reasonable inferences that can be drawn from them."  *Id.* at
3.  He asserts that all factual inferences that can be drawn from the pleadings
should be drawn in favor of Mr. Hinton, and "[i]f there are any <u>factual</u> questions as
to a statute of limitations defense, those factual questions must be resolved by a
jury."  *Id.* (emphasis in original) (citing *Townsend v. Chute Chemical Co.,* 691 A.2d
199, 202 (Me. 1997)).  Mr. Hinton observes that Outboard Marine failed to provide
even an affidavit to support its assertion that it did not receive notice before April 8,
2004, and that it is relying instead on "conclusory speculation."  *Id.* at 3-4.[9]

---

[8] Mr. Hinton disagrees with Outboard Marine that certified mail was an inappropriate means to
serve process upon the Illinois office.  He cites 13-C M.R.S. § 1510(2)(A), which he says "allows
service by registered or certified mail, return receipt requested, at a foreign corporation's principal
office when the corporation's 'registered agent cannot with reasonable diligence be served.'"  *Id.*  This
statute--now repealed--applied only to foreign corporations authorized to transact business in Maine.
The Court does not know whether Outboard Marine was so authorized and the parties provided no
guidance on this issue.  At this stage, the Court does not know whether the statute applies.

[9] Mr. Hinton also argues that the statute of limitations for his state law breach of warranty claim
has not run since Outboard Marine has been absent the state and insolvent.  He asserts that under
Maine law, "the time of absence from the state or the time of insolvency 'shall not be taken as part of
the time limited for the commencement of the action.'"  *Pl.'s Sur-reply.* at 4 (citing 14 M.R.S. § 866).
He argues that Outboard Marine "has not, since this lawsuit was initiated, had a resident agent for
service of process within the state pursuant to 14 M.R.S.A. § 867 so that it is not entitled to the
benefits accorded a domestic corporation and has therefore been absent from the state" *Id.*
Therefore, Mr. Hinton argues the six-year statute of limitations still has not run.

### 5. Oral Argument

The parties resolved several issues at oral argument. First, the parties agreed that for purposes of this motion, any distinctions between the federal and Maine relation back rules are irrelevant. Second, they agreed that 11 U.S.C. § 108(c) is not germane because the merits of Outboard Marine's motion depend on whether the Second Amended Complaint relates back to the First Amended Complaint, which was filed within the original limitations period. If Mr. Hinton timely filed the Second Amended Complaint, § 108's 30-day extension in June and July 2008 is superfluous. Third, they agreed that because the parties' arguments on this motion for judgment on the pleadings presented facts outside of the pleadings, the motion must be treated as one for summary judgment pursuant to Rule 12(d). FED. R. CIV. P. 12(d). Fourth, Outboard Marine conceded that the Court must view the disputed facts in the light most favorable to Mr. Hinton for purposes of this motion.

Outboard Marine expanded upon its argument that it did not have sufficient notice of the action by April 8, 2004. When questioned by the Court what exactly it meant by its assertion it had abandoned the Illinois address in December, 2002, Outboard Marine replied that the company had actually and completely abandoned the property, such that it had no agents on the premises. This led the Court to ask

---

The Court does not address this issue. Mr. Hinton did not raise this argument until his Sur-reply, and the briefs do not provide enough information regarding Outboard Marine's business in Maine or its insolvency for the Court to properly consider this issue.

how the attorney for Outboard Marine's bankruptcy trustee could have received the June 18, 2004 subpoena sent to that address. Outboard Marine replied that it must have been a matter of mail forwarding.[10]

## II. DISCUSSION

### A. Applicable Law

#### 1. Judgment on the Pleadings Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). "If, on motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). The parties' briefs and attachments proceeded to present facts outside of the pleadings.

Ordinarily, the presence of facts outside of the pleadings transforms a motion for judgment on the pleadings to a motion for summary judgment. FED. R. CIV. P. 12(d) (stating that "[i]f, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56"). The parties, however, did not follow Rule 12(d) and did not present statements of material fact in accordance with the District's Local Rule 56. D. ME. LOC. R. 56. The presence of matters

---

[10] Noting that memories have faded, important documents have been destroyed, and the boat itself is unavailable, Outboard Marine closed oral argument by reiterating that it would be prejudiced defending this case on the merits due to the passage of time. The Court observed that those issues were not yet before the Court.

outside the pleadings spells doom for the motion for judgment on the pleadings, yet the parties have not refined the factual issues as contemplated by the local rule. To guide the parties, however, the Court will treat the motion as a motion for summary judgment since its resolution seems clear.[11]

Summary judgment is properly granted "if the record, viewed in the light most favorable to the nonmoving party, discloses no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Penn-America Ins. Co. v. Lavigne*, 617 F.3d 82, 84 (1st Cir. 2010). For summary judgment purposes, "'genuine' means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which might affect the outcome of the suit under the governing law." *Buchanan v. Maine*, 469 F.3d 158, 166 (1st Cir. 2006) (quoting *Seaboard Sur. Co. v. Town of Greenfield*, 370 F.3d 215, 218-19 (1st Cir. 2004)) (internal quotation marks omitted). "Neither conclusory allegations [nor] improbable inferences are sufficient to defeat summary judgment." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236-37 (1st Cir. 2002) (citation and internal quotation marks omitted).

### 2.     Relation Back Standard

---

[11] The parties presented the Court with a motion for summary judgment without complying with Local Rule 56. This alone would be ground for dismissal of the motion. Both parties are to blame. Outboard Marine began the motion as a motion for judgment on the pleadings and it was Mr. Hinton who by presenting facts, transformed it into a motion for summary judgment, but in doing so failed to comply with the local rules. When Outboard Marine replied, it compounded Mr. Hinton's mistake. To dismiss the motion for judgment on the pleadings because of the failure to comply with the local rules, would reward Mr. Hinton, whose filings transformed the Rule 12(c) motion into a Rule 56 motion, when both parties are at fault. Acting in its discretion, the Court reaches the merits of the motion despite the parties' lack of compliance, but notes that it would be preferable if the parties followed the local rules.

For purposes of this motion, the Maine and federal relation back standards are identical.[12]  Federal Rule 15 provides in relevant part:

> (c)(1) An amendment to a pleading relates back to the date of the original pleading when:
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out-- in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The federal rule requires notice within the period provided by Rule 4(m):

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service of an appropriate period.

FED. R. CIV. P. 4(m).  Maine requires notice within the period provided by Maine Rule 3:

> Except as otherwise provided in these rules, a civil action is commenced (1) by the service of a summons and complaint, or (2) by filing a complaint with the court. When method (1) is used, the complaint must be filed with the court within 20 days after completion

---

[12] Because the Maine and federal standards are the same for purposes of this case, the Court does not reach the question of whether the state or federal rule controls.

of service. When method (2) is used, the return of service shall be filed with the court within 90 days after the filing of the complaint. If the complaint or the return of service is not timely filed, the action may be dismissed on motion and notice, and in such case the court may, in its discretion, if it shall be of the opinion that the action was vexatiously commenced, tax a reasonable attorney's fee as costs in favor of the defendant, to be recovered of the plaintiff or the plaintiff's attorney.

ME. R. CIV. P. 3. The only difference between the federal and state rules is that the former provides for service within 120 days and the latter provides for service within 90 days. As the parties agreed at oral argument, this distinction is without a difference in this case.

Both rules contemplate that courts may extend the relevant time periods. Maine Rule 6(b) allows a court to enlarge any time period specified by the Maine Rules for cause shown "if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order." ME. R. CIV. P. 6(b).[13] The federal rule expressly allows a court to extend the time for service for "good cause." Fed. R. Civ. P. 4(m). Therefore, although the default service periods differ, both rules allow courts to extend that period. Here, Mr. Hinton moved for an enlargement of time for service on November 20, 2003--within 90 days of filing the

---

[13] In its entirety, Maine Rule 6(b) states:

> (b) When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect, but it may not extend the time for taking any action under Rules 50(b), 52(b), 59(b), (d), and (e), and 60(b), except to the extent and under the conditions stated in those rules.

ME. R. CIV. P. 6(b).

complaint on September 9, 2003—and the Maine Superior Court granted that enlargement.

Furthermore, both rules include such enlargements in the service period for relation back purposes. *See* FED. R. CIV. P. 15(c) advisory committee's note (1991) (explaining that the 1991 amendment to 15(c)(3) "allows not only the 120 days specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule . . .") *and* ME. R. CIV. P. 15(c) advisory committee's note (1993) (explaining that "Rule 15(c) is amended to adopt a 1991 amendment of Federal Rule 15(c) for the purpose of maintaining Maine's relation-back provisions in conformity with the federal rule"). In other words, notice may be received more than 90 or 120 days after the filing of the complaint if the court granted an extension of time for service. Under either rule, the applicable period in which Outboard Marine must have received notice was not the 90 or 120 days after the First Amended Complaint was filed, but rather the court-extended period that was granted initially on December 18, 2003, was extended on February 23, 2004, and expired on April 8, 2004.

## B.    Analysis

The parties do not dispute that the cause of action accrued on September 10, 2000. Nor do they dispute that the three year statute of limitations for maritime actions applies to Mr. Hinton's negligence and strict liability claims and the six year statute of limitations under Maine's Uniform Commercial Code applies to Mr. Hinton's breach of the implied warranty of merchantability claim. The First

21

Amended Complaint, naming OMC, Inc. as a defendant, was filed on September 9, 2003, within the limitations period for all claims. Therefore, if the Second Amended Complaint—the first to name Outboard Marine as a defendant—relates back to the First Amended Complaint under Rule 15(c), Mr. Hinton's claims are not time-barred.

To determine whether Outboard Marine received notice, the Court focuses not on whether Outboard Marine was served, but on whether it had actual or constructive notice. Rule 15(c)'s notice provision does not require that the plaintiff *serve* an amended complaint within the service period; it requires only that the "defendant has received sufficient 'notice of the action' within the [service] period that he will not be prejudiced in defending the case on the merits. . . . '[T]he notice need not be formal.'"[14] *Krupski v. Costa Crociere S.P.A.,* 130 S. Ct. 2485, 2497 n.5 (2010) (quoting Advisory Committee's 1966 Notes 122).

Because the parties do not dispute that the Second Amended Complaint asserts a claim or defense that arose out of the occurrence set out in the original pleading, resolution of this dispute turns on whether, by April 8, 2004, Outboard Marine 1) had such notice of the action that it will not be prejudiced in defending on the merits; and, 2) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity. In

---

[14] For this reason, it is unnecessary to consider Outboard Marine's contention that Mr. Hinton's March 2004 summons failed to comply with Illinois procedure for service of process.

making this determination, the Court views the facts in the light most favorable to Mr. Hinton as the non-moving party. *See Penn-America*, 617 F.3d at 84.

### 1. Outboard Marine Had Notice

Mr. Hinton provides evidence of two occasions before April 8, 2004 on which Outboard Marine received notice of the action.

First, Mr. Hinton provides the affidavit of Deputy Sheriff Paul Paradee of Newcastle County, Delaware, confirming that he personally served the representative agent of OMC, Inc. on September 12, 2003. Deputy Paradee averred that he understood the person he served to be the same person named in the summons and amended complaint. *Pl.'s Resp.* at Ex. A, *Affidavit of Service*. Mr. Hinton's evidence that Outboard Marine has done business as OMC, Inc supports the reasonableness of this understanding. *See Pl.'s Resp.* at 1 (citing *Lady v. Neal Glaser Marine, Inc.,* 228 F.3d 598 (5th Cir. 2000)).

Outboard Marine's response focuses on the formal deficiency of Deputy Paradee's service but fails to adequately rebut notice. *Def.'s Reply* at 5-6. Mr. Hinton's own exhibits reflect that Outboard Marine did not accept service at that time, *Pl.'s Resp.* at Ex. D, but he argues that that deficiency alone does not defeat notice and that Outboard Marine has not offered so much as an affidavit rebutting notice. *Pl.'s Sur-reply* at 4.

Mr. Hinton's second proffer of Outboard Marine's notice is the March 19, 2004 summons he sent by certified mail to Outboard Marine. Mr. Hinton provides copies of both the summons addressed to Outboard Marine Corporation and the

return receipt signed by Terry Ellis. *Pl.'s Resp.* at Ex. D. Outboard Marine responds that it had abandoned the address by that date. *Def.'s Reply* at 6. Its sole support for this assertion is an order from the bankruptcy court approving an abandonment of the property. *Id.* at Ex. B. But the order does not refer to the Illinois address to which the certified mail was addressed; it merely approves an abandonment and transfer of certain assets. *Id.* Moreover, it does not necessarily follow from the bankruptcy court's approval of abandonment that Outboard Marine had actually abandoned the property by March 19, 2004. Outboard Marine, however, asserted at oral argument that no agents for Outboard Marine remained on the premises after December, 2002. The competing assertions and scant record leave the Court unable to determine who Terry Ellis is and whether the property was actually abandoned.

More damaging to Outboard Marine's claim that it lacked notice is Ms. Klaus's acknowledgment that Outboard Marine received the June, 2004 certified mailing sent to that address. Outboard Marine explained at oral argument that the mailing was probably forwarded from the abandoned property. If so, this does not explain why the June, 2004 subpoena would have been forwarded but not the March, 2004 summons, both of which were sent to the same address.

Because the Court is required to view the facts in the light most favorable to Mr. Hinton for purposes of this motion, it accepts as true Mr. Hinton's factual assertion that Outboard Marine received notice of the action prior to April 8, 2004. That the parties present a genuine dispute as to whether Outboard Marine had

24

notice prior to that date is sufficient for the Court to conclude for purposes of this motion that it did.

### 2. Outboard Marine Knew or Should have Known that the Action Would Have Been Brought Against it but for a Mistake Concerning the Proper Party's Identity

For the Second Amended Complaint to relate back, the plaintiff must prove that he made an error concerning the identity of the proper party. The amendment will not relate back when "there is a lack of knowledge of the proper party." *Wilson v. U.S. Government,* 23 F.3d 559, 563 (1st Cir. 1994) (citation omitted). However, "[p]roperly construed, the rule encompasses both mistakes that were easily avoidable and those that were serendipitous. . . . The drafters believed that such errors would trigger Rule 15(c)(3) notwithstanding that reasonable diligence almost always would prevent them from occurring." *Leonard v. Parry,* 219 F.3d 25, 29 (1st Cir. 2000) (allowing relation back when the plaintiff intended to sue driver of a vehicle but mistakenly named the passenger as defendant in the initial complaint).

Mr. Hinton's naming OMC, Inc. as a defendant in the First Amended Complaint was an error concerning the identity of the proper party. The Second Amended Complaint could not relate back to the Initial Complaint, in which Mr. Hinton named Jane Doe defendants, because Mr. Hinton did not mistake the entity's identity, he did not know the proper party at all. *See Wilson*, 23 F.3d at 563. Nevertheless, Mr. Hinton's First Amended Complaint, also filed before the running of the limitations period, named OMC, Inc. *First Am. Compl* ¶3. It asserted that OMC, Inc. was "engaged in the manufacture and marketing of Four

Winns Brand boats." *Id.* Mr. Hinton used Outboard Marine's initials and identified the defendant as manufacturer and marketer of Four Winns brand boats. Again viewing the facts in the light most favorable to Mr. Hinton, the Court finds that Mr. Hinton's naming of OMC, Inc. instead of Outboard Marine was a mistake and not a failure to identify the proper party.[15] Whether Mr. Hinton could have identified the proper party had he exercised all "reasonable diligence" is irrelevant. *See Leonard,* 219 F.3d at 29.

Having established that Mr. Hinton made a mistake concerning the proper party's identity, the Court finds that Outboard Marine either knew or should have known that the action would have been brought against it but for the mistake. *See* FED. R. CIV. P. 15(c)(1)(C)(ii). Whether Outboard Marine received notice of the action on September 12, 2003 or March 19, 2004, such notice would have made it obvious that Outboard Marine was an intended party. The Complaint described OMC, Inc. as the manufacturer and marketer of Four Winns brand boats, which Outboard Marine was. Furthermore, the March 2004 summons properly identified Outboard Marine in the heading. Finally, the initials OMC correspond to the name Outboard Marine Corporation.

---

[15] On this record, Mr. Hinton's mistake does not seem unreasonable. In addition to the matching initials, Outboard Marine Corporation is listed as d/b/a OMC, Inc. in a Fifth Circuit case. *See Lady v. Neal Glaser Marine, Inc.,* 228 F.3d 598 (5th Cir. 2000). The Fifth Circuit lists the defendant in that case as follows: "Outboard Marine Corporation, doing business as OMC, Inc., doing business as OMCCC, doing business as Chris Craft." *Id.* Outboard Marine's multiple d/b/a's makes Mr. Hinton's confusion more understandable.

Because the elements of Rule 15(c) are met, the Second Amended Complaint relates back to the First Amended Complaint, which was filed before the limitations period ran on Mr. Hinton's claims.

## III.   CONCLUSION

The Court DENIES Outboard Marine Corporation's Motion for Judgment on the Pleadings (Docket #26).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 22nd day of December, 2010