UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL HINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09-cv-00554-JAW |
| | ) | |
| OUTBOARD MARINE CORPORATION, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO EXCLUDE CERTAIN EVIDENCE**

With an impending trial, Michael Hinton moves *in limine* to obtain a pretrial ruling on certain issues. *Pl.'s First Mot.* in Limine *to Exclude Certain Evid.* (Docket # 142) (*Pl.'s Mot.*). The Defendants responded. *Defs.' Resp. to Pl.'s Mot.* in Limine *to Exclude Certain Evid.* (Docket # 155) (*Defs.' Opp'n*). In this Order, the Court focuses solely on whether the Defendants will be allowed to call Plaintiff's counsel, Arthur J. Greif, as a witness.

Observing that OMC Recreational Boat Group, Inc. and Outboard Marine Corporation (collectively OMC) listed Mr. Hinton's trial lawyer, Arthur J. Greif, Esq., as a witness, Mr. Hinton moves for an order preventing OMC from calling his lawyer to testify. *Pl.'s Mot.* at 2-3. Mr. Hinton's counsel worries that OMC is attempting to disqualify him from continuing to represent Mr. Hinton. *Id.* at 2. He notes that despite the requirements of the Pretrial Order, OMC failed to set forth a description of Mr. Greif's proposed testimony and that, if he has personal

knowledge, OMC failed to properly list him as such in their initial disclosures and interrogatory answers. *Id.* at 2-3. OMC responds that Mr. Greif is "the only witness who has personal knowledge of the attempted service on the Defendants OMC or who can testify as to Plaintiff's admission that in 1989 Four Winns, Inc. was a separate corporation with its own board of directors, etc." *Defs.' Opp'n* at 14.

To begin, before OMC is allowed to call Mr. Greif as a witness, they must obtain the Court's permission. D. ME. LOC. R. 39(d) ("No attorney shall without leave of Court conduct the trial of a jury action in which the attorney is a witness for the party represented at trial"). OMC has not sought that permission.[1]

Moreover, OMC does not address the applicability of Rule 3.7 of the Maine Rules of Professional Conduct, which generally forbids an attorney from acting as an advocate at a tribunal in which the lawyer is likely to be a necessary witness. ME. R. PROF. CONDUCT 3.7. The Rule contains two exceptions potentially applicable here:

(1) The testimony relates to an uncontested issue; or

(2) Disqualification would work substantial hardship on the client.

*Id.* 3.7(a)(1), (3). The Maine Professional Rules note that the mixing of advocate and witness roles may confuse or mislead the jury because it "may not be clear whether a statement by an advocate-witness should be taken as proof or as an

---

[1] Although OMC listed Mr. Greif as a witness in its Final Pretrial Memorandum, *Defs.' Pretrial Mem.* at 4 (Docket # 101), the Report of Final Pretrial Conference and Order does not refer to this issue. *Report of Final Pretrial Conf. and Order* (Docket # 103). The parties should have raised this issue front and center with the Magistrate Judge on December 5, 2011 and should have proposed a means to brief and resolve it. The first the Court was aware of the issue was with the January 6, 2012 Hinton motion and the January 13, 2012 OMC response. At the very least, the parties should have alerted the Court to this issue at the *Daubert* hearing on January 10, 2012.

analysis of the proof." *Id*. Comment (2). The Maine Professional Rules allow the attorney to act as a witness if "the testimony will be uncontested" and "the ambiguities in the dual role are purely theoretical." *Id*. Comment (3). If the testimony is contested, the Rules provide that "a balancing is required between the interests of the client and those of the tribunal and the opposing party." *Id*. Comment (4). The Rules mention such factors as "whether it is a bench, jury trial, or other proceeding, the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses." *Id*. "Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness." *Id*.

In view of these serious considerations, the Court turns to why OMC insists that they must call opposing counsel as a witness. Turning first to Mr. Greif 's knowledge of attempted service of process, this issue relates to OMC's three-year statute of limitations defense in which OMC contends that the statute of limitations expired on this claim on September 10, 2003. *Defs.' Opp'n* at 2. The Court preliminarily addressed this issue in a December 10, 2010 Order. *Order Denying Mot. for J. on the Pleadings* (Docket # 38) (*Order*). In that Order, the Court set forth the convoluted history of this lawsuit from the July 18, 2003 filing of the Complaint, through three amended complaints, dismissals, service of process issues, requests for enlargement, and an intervening suggestion of bankruptcy. *Id*. at 1-4.

3

It concluded that disputed factual issues precluded a definitive answer on whether OMC's statute of limitations defense bars this action. *Id.*

To place the question of service of process in proper context, in response to OMC's earlier statute of limitations motion, Mr. Hinton asserted that after filing the Complaint on July 18, 2003, he served OMC, Inc.'s registered agent on September 12, 2003, he served Outboard Maine Corporation on March 8, 2004, he served Four Winns, Inc. on June 18, 2004, and that he received an email acknowledgement from the attorneys for the Chapter 7 Trustee for Outboard Marine Corporation on July 24, 2004. *Id.* at 8-9. OMC denied that it received service at these times and has put Mr. Hinton to his proof. *Defs.' Opp'n* at 8-9. OMC contends that Mr. Greif, who directed Mr. Hinton's efforts to effect service, is a necessary witness on this issue. *Id.* at 14.

The second basis for seeking Mr. Greif's testimony—that Mr. Greif is the only person who can testify about Mr. Hinton's admission that in 1989 Four Winns, Inc. was a separate corporation—is more elusive. Mr. Hinton named Four Winns, Inc. and Four Winns Boats, L.L.C. as party Defendants in the First Amended Complaint filed on September 9, 2003. *State Ct. Record* Attach. 5 *First Am. Compl.* (Docket # 6) (*First Am. Compl.*). On October 15, 2003, he dismissed his claim against Four Winns Boats, LLC. *Id.* Attach. 10 *Dismissal of a Party Pursuant to M.R. Civ. P. 41(a)(1)(i)*. On August 16, 2004, the same day Outboard Marine filed a suggestion of bankruptcy, the Maine Superior Court dismissed Four Winns, Inc. as a party

4

Defendant. *Order* at 3.² Finally, on February 2, 2009, Mr. Hinton filed a Second Amended Complaint, alleging that Four Winns, Inc. was a division of Outboard Marine Corporation. *Id.* at 3.

If Four Winns, Inc. was a division of Outboard Marine Corporation, Mr. Hinton can claim that in impleading Outboard Marine Corporation, he is suing Four Winns, Inc. too and if his suit against Outboard Marine Corporation is timely so is his suit against Four Winns, Inc. By contrast, if Four Winns, Inc. was a stand-alone corporation, OMC says he dismissed the timely claim in 2003 and 2004 and he cannot now resurrect the lawsuit against Four Winns, Inc.

To prove that Four Winns was a stand-alone corporation in 1989, when the accident boat was sold, OMC intends to confront Mr. Greif with his own allegation, namely the First Amended Complaint in which he alleged that "Defendant, Four Winns, Inc., was principally engaged in the manufacture of recreational boats and component parts in 1989." *First Am. Compl.* ¶ 2. To buttress their contention, OMC cites *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58 (1st Cir. 1992) in which the First Circuit wrote that "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Defs.' Opp'n* at 12 (citing *Schott*, 976 F.2d at 61).

The Court is not at all certain that *Schott* would hold Mr. Hinton to an early and disavowed allegation. In *Schott*, the plaintiff had alleged that it was a party to a particular contract and then in an attempt to avoid summary judgment, it

---

² In its Order, the Court observed that the state court record on the period from May 3, 2004 to February 4, 2009 is sparse and unclear. *Order* at 3. However, the parties seem to agree that the Superior Court dismissed Mr. Hinton's claim against Four Winns, Inc. on August 16, 2004. *Id.*

5

asserted that contract had been revoked. 976 F.2d at 61. Noting that the plaintiff had "clearly and unambiguously alleged in its original complaint and amended complaints that it was a party to the 1985 Agreement," the First Circuit affirmed the district court's conclusion that the "plaintiff should not be allowed to contradict its express factual assertion in an attempt to avoid summary judgment." *Id.*

In the unusual circumstances of this case, where the manufacturer of the accident boat has undergone a series of chameleon-like changes, OMC has the laboring oar to convince the Court to hold Mr. Hinton to the allegation in the First Amended Complaint. In *Lady v. Neal Glaser Marine, Inc.*, 228 F.3d 598 (5th Cir. 2000), the Fifth Circuit described Outboard Marine Corporation as follows: "Outboard Marine Corporation, doing business as OMC, Inc., doing business as OMCCC, doing business as Chris Craft." *Id.* at 598. Here, there is evidence of perhaps three more identities: OMC Recreational Boat Group, Inc., Four Winns Boats, L.L.C., and Four Winns, Inc. Given OMC's multiple identities, it is unremarkable that Mr. Hinton was flummoxed for a while about whom to sue. In these circumstances, the Court remains to be convinced that OMC should be allowed to call Mr. Hinton's lawyer and grill him about his early and rectified identification of the proper defendant.

Neither of these issues, however, affects the trial of the products liability claim. Therefore, in view of OMC's position, the Court is not inclined to allow the parties to proceed forward at the same time on both the products liability and corporate identity/statute of limitations claims. FED. R. CIV. P. 42(b); *McKellar v.*

*Clark Equip. Co.*, 101 F.R.D. 93, 94 (D. Me. 1984) (listing bifurcation criteria). The Maine Rules of Professional Conduct advise strongly against proceeding with a trial, where the lawyer for a party is called as a witness and cross-examined by the opposing party's counsel. A simple example will suffice. During his closing argument, when Mr. Greif presents his view of his own testimony, he would be vouching for his own credibility, a potential violation of the Maine Rules of Professional Conduct. ME. R. PROF. CONDUCT 3.4(e) ("A lawyer shall not in trial, . . . assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to . . . the credibility of a witness"). Yet, to properly represent his client, he cannot ethically avoid discussing an issue that requires juror resolution. As both witness and attorney, Mr. Greif would be in an untenable position.

In the Court's view, if OMC wishes to present Mr. Greif as a witness on this issue, the Court should bifurcate the case, allowing Mr. Greif to proceed forward with the products liability aspect of the lawsuit on January 30, 2012 and putting aside for the time being the dense question of whether the current OMC Defendants are the proper defendants and whether they were brought in too late. If Mr. Hinton successfully obtains a verdict, the Court would convene a separate jury to find facts necessary to resolve OMC's statute of limitations and corporate identity defenses. If this occurs, the Court will address whether another member of Mr. Greif's firm could ethically represent Mr. Hinton or whether it will be necessary to obtain new counsel to proceed with this part of the lawsuit. If Mr. Hinton is unsuccessful, the

7

case is over and the Court, the parties, and the jurors will be relieved from resolving these questions.

The Court is scheduling an immediate conference of counsel to discuss this matter.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 23rd day of January, 2012