UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL HINTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09-cv-00554-JAW |
| | ) | |
| OUTBOARD MARINE | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S THIRD MOTION *IN LIMINE* CONCERNING CROSS-EXAMINATION OF MR. HINTON AND OTHER FACT WITNESSES**

In this pretrial order, the Court preliminarily addresses a number of evidentiary matters that the Plaintiff believes may arise at trial.

**I.   STATEMENT OF FACTS**

Michael Hinton is concerned that, during trial in this products liability action, Outboard Marine Corporation and OMC Recreational Boat Group, Inc. (collectively OMC) will attempt to cross-examine him, his former girlfriend Robin Sprague, and his son Justin Hinton on a number of areas which he says are impermissible. *Pl.'s Third Mot.* in Limine *Concerning Cross-Examination of Mr. Hinton and Other Fact Witnesses* (Docket # 144) (*Pl.'s Mot.*). Regarding Mr. Hinton and Ms. Sprague, the areas of concern include (1) Mr. Hinton's religious beliefs and opinions, (2) the reasons for his divorce, (3) the reasons for his breakup with Robin Sprague, (4) Mr. Hinton's brother's alleged use of drugs, (5) whether loans from his mother needed to be repaid, (6) his reasons for leaving employment with Elder

Independence of Maine, (7) whether he was a victim of child abuse, and (8) whether he is current on his child support obligations. *Id.* at 1-3. Regarding Justin Hinton, the areas include (1) the reasons for Mr. Hinton's breakup with Robin Sprague, (2) whether his father is a homosexual, and (3) Justin Hinton's criminal record, if any. *Id.* at 3-4.

OMC responds that it "has a right to defend itself." *Def. Outboard Marine Corporation and OMC Recreational Boat Group, Inc. Resp. to Pl.'s Third Mot.* in Limine *Concerning Cross-Examination of Mr. Hinton and Other Fact Witnesses* at 4, 7 (Docket # 157) (*Defs.' Opp'n*). OMC says that Mr. Hinton's religious beliefs are relevant to his lost earnings claim of $452,000. *Id.* at 2. OMC explains that Mr. Hinton had been employed as a minister for the Methodist Church beginning in 1975 but before the accident had resigned from the Methodist Conference over multiple disputes and his refusal to obey instructions from the Methodist Bishop. *Id.* at 4. Furthermore, OMC points out that Mr. Hinton has limited his range of employment opportunities by restricting potential employment to those things in which he has a calling, namely ministry or teaching. *Id.* OMC notes that Mr. Hinton turned down four offers of employment with the Methodist Church before this incident because of his religious disagreements with the Church. *Id.* at 4-6. OMC contends that this evidence is relevant not only to his loss of earnings claim but also to his failure to mitigate damages. *Id.* at 6-8. Finally, OMC maintains that his claim for pain and suffering damages places his state of mind, including his

breakup with his girlfriend and his ex-wife, at issue before the jury. *Id.* at 8-9. As to the remaining issues, OMC says these may be addressed at side-bar. *Id.* at 9.

II. **DISCUSSION**

Much of what is or is not admissible depends upon what Mr. Hinton claims for damages and how he and others testify.

A. **Reasons for the Break with the Methodist Church**

Preliminarily, the parties appear to agree that the fact that Mr. Hinton had broken with the Methodist Church before the accident is admissible because after the accident he restricted himself to jobs involving positions for which he had a calling, namely the ministry or teaching, but could not work—as he had in the past—for the Methodist Church. However, the reason for his break with the Methodist Church is irrelevant and does not pass Rule 403 standards. FED. R. EVID. 403. Not only does it raise Rule 610 issues, FED. R. EVID. 610, but evidence that his disagreement with the Methodist Church centered on its views about homosexuality infuses a needless area of prejudicial controversy into this trial. The Court concludes that Mr. Hinton may be asked whether he had broken with the Methodist Church on an issue of dogma or church teachings before the accident and whether he maintained that break after the accident, but he may not be asked the details about his dispute with the Methodist Church. Before OMC asks questions about the reasons for Mr. Hinton's break with the Methodist Church, OMC counsel must approach sidebar.

### B. Reasons for his Divorce and his Breakup with his Girlfriend

The parties have not provided any detail about Mr. Hinton's divorce and his breakup with his girlfriend. For example, the Court does not know when he was divorced and when he broke up with his girlfriend. The Court assumes that in telling his personal history, Mr. Hinton may inform the jury that he was divorced, that he and Robin Sprague were dating, and that he and Robin Sprague broke up after the accident. If so, OMC would have the right to ask whether he is claiming that the divorce or the breakup were caused by the accident. If Mr. Sprague says no, there is no reason to pursue the matter further. If Mr. Sprague contends that his accident caused his divorce or breakup, OMC would have the right to explore with Mr. Hinton and with his son non-accident-related causes for these events. The Court cannot rule in or out this evidence because admissibility depends upon Mr. Hinton's claims and the testimony at trial. Before OMC explores these areas, OMC counsel must approach sidebar.

### C. Mr. Hinton's Brother's Alleged Drug Use

OMC did not respond to this issue. The Court cannot conceive why Mr. Hinton's brother's alleged use of drugs would be relevant or material to the issues in this trial. FED. R. EVID. 402. OMC counsel must not approach this line of questioning without prior express permission from the Court.

### D. Whether Loans from his Mother Need to be Repaid

The facts here are blurry. Apparently, Mr. Hinton borrowed money from his mother to pay medical bills resulting from the accident. Mr. Hinton is going to

4

claim the value of the medical bills he paid from his mother's loan as part of his special damages. OMC objects, contending that Mr. Hinton's mother does not expect repayment. The Court agrees with Mr. Hinton that whether his mother loaned or gave him money is not relevant. Whether by gift or loan, once the money was transferred to Mr. Hinton, he used the money to pay medical bills and therefore it is an appropriate element of his claim for damages. At the same time, if Mr. Hinton asserts that the loans from his mother caused him additional financial or emotional stress, OMC would have the right to explore whether the money from his mother was truly a loan or a gift.

### E.  Reasons for Leaving Elder Independence of Maine

Apparently, after the accident, Mr. Hinton became employed at Elder Independence of Maine but was let go during the probationary period. According to Mr. Hinton, OMC has suggested that he was discharged because of a sexual harassment charge, a contention Mr. Hinton denies. OMC has not responded to this part of Mr. Hinton's motion. Before OMC raises this issue before the jury, it must first approach sidebar and obtain the Court's permission.

### F.  Whether Mr. Hinton was a Victim of Child Abuse

OMC simply states that it has a right to question Mr. Hinton and other witnesses about whether Mr. Hinton was a victim of child abuse on the theory that it would relate to his damages and his obligation to mitigate damages. The Court is not convinced. Before OMC raises this issue before the jury, it must first approach sidebar and obtain the Court's permission.

G. **Whether Mr. Hinton is Current on his Child Support Obligations**

OMC asserts that it has a right to question Mr. Hinton and other witnesses about whether Mr. Hinton is current on his child support obligations. Its theory is that this would somehow relate to his damages and his obligation to mitigate damages. The Court is not convinced. Before OMC raises this issue before the jury, it must first approach sidebar and obtain the Court's permission.

H. **Justin Hinton: Whether Mr. Hinton is a Homosexual**

OMC has not responded to this part of Mr. Hinton's motion. The Court cannot imagine any probative value for this question. The Court forbids OMC from asking Justin Hinton any such questions.

I. **Justin Hinton's Criminal Record, If Any**

OMC did not respond to this portion of Mr. Hinton's motion. Federal Rule of Evidence 609 establishes the circumstances under which evidence of a witness's prior criminal record may be admitted. FED. R. EVID. 609. Before OMC may question Justin Hinton about any criminal record, it must have a good faith basis for doing so. The Court reminds OMC that a trial is not a fishing expedition and the Court will not allow OMC to explore during trial what it should have uncovered during discovery. Before OMC approaches this area, it must approach the Court and explain the evidentiary foundation for this line of questioning.

### III. CONCLUSION

The Court GRANTS in part, DENIES in part, and DEFERS in part Plaintiff's Third Motion *in Limine* Concerning Cross-Examination of Mr. Hinton and Other Fact Witnesses (Docket # 144).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of January, 2012