UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MICHAEL HINTON,                 )
                                )
       Plaintiff,               )
                                )
    v.                          )    1:09-cv-00554-JAW
                                )
OUTBOARD MARINE                 )
CORPORATION, et al.,            )
                                )
       Defendants.              )

**ORDER ON PLAINTIFF'S MOTION TO EXCLUDE OR SUBSTANTIALLY LIMIT THE TESTIMONY OF ROBERT MACNEILL AND DEMONSTRATIVE EXHIBITS WITH THAT TESTIMONY**

With trial rapidly approaching, the Court rejects the Plaintiff's motion to exclude or substantially restrict the testimony of one of the Defendants' experts based on asserted discovery violations. The Court also concludes that the Defendants' expert may not invade the province of the jury by telling them who to believe, but that he may otherwise attempt to reconstruct the accident based on his expertise. Finally, the Court allows the Defendants to use some but not all of the proposed demonstrative exhibits during their questioning of their expert.

I.  **STATEMENT OF FACTS**

As trial looms, the Plaintiff moves to exclude or limit the testimony of Robert MacNeill, the Defendants' accident reconstruction expert. *Pl.'s Mot. to Exclude or Substantially Limit the Test. of Robert MacNeill and Demonstrative Exs. Connected with that Test.* (Docket # 154) (*Pl.'s Mot.*). The Defendants object. *Defs.' Mem. in*

*Resp. to Pl.'s 2nd Mot. to Exclude or Substantially Limit the Test. of Robert MacNeill and Demonstrative Exs.* (Docket # 162) (*Defs.' Opp'n*). Mr. Hinton attaches a four-page January 16, 2011 report from Mr. MacNeill in which he expresses opinions about how the accident occurred and who was at fault. *Pl.'s Mot.* Ex. 1 (Letter from Robert MacNeill to Mark Hart, Esq. (Jan. 16, 2011)). Mr. Hinton also attaches a January 10, 2012 nineteen-page document authored by Mr. MacNeill, setting forth a summary of each witness's depositions and providing an accident reconstruction based on the recollections of the witnesses. *Id.* Ex. 2 (*Accident Reconstruction, Robert MacNeill*) (*MacNeill Accident Reconstruction*).

## II. DISCUSSION

### A. Expert Testimony Disclosure

The Court rejects Mr. Hinton's claim of late and improper expert witness disclosure and his demand that the Court allow Mr. Hinton's deposition at the Defendants' expense. If Mr. Hinton wishes to take Mr. MacNeill's deposition at his own expense, he should alert the Court and it will consider whether to allow such a deposition at this late date. However, Mr. Hinton, not the Defendants, must pay the expenses for what amounts to a discovery deposition.

### B. Robert MacNeill's Proposed Testimony[1]

Mr. MacNeill's report is a different matter. In his report, Mr. MacNeill elaborately summarizes the deposition testimony of the various witnesses, charts their recollections on different critical issues, and points out consistent and

---

[1] The Court is unclear, even after reviewing the transcript, why these issues with Mr. MacNeill's proposed testimony were not presented at the *Daubert* hearing.

inconsistent testimony. He then pronounces an expert resolution of the conflicting testimony by setting forth his view of "the most probable accident scenario." *MacNeill Accident Reconstruction* at 14. For example, having analyzed each of the witness's descriptions about the length of their boat outing the day of the accident, he opines that "Christopher Sprague's recollection of the timing is probably most accurate." *Id.* at 13. This portion of Mr. MacNeill's proposed expert testimony is clearly inadmissible because in expressing expert views about whose testimony the jury should and should not accept, Mr. MacNeill is usurping the jury's function. FED. R. EVID. 702; *United States v. Gonzalez-Maldonado*, 115 F.3d 9, 15 (1st Cir. 1997) ("issues of credibility are for the trier of fact"); *United States v. Sullivan*, 85 F.3d 743, 750 (1st Cir. 1996) ("It is not the place of one witness to draw conclusions about . . . another witness['s] veracity"). Furthermore, at the *Daubert* hearing, the Court clarified that Mr. MacNeill may be asked to reconstruct the accident based on assumed facts so long as those facts are or will be supported by the evidence. *Tr. of Proceedings* 83:9-19 (Docket # 170); *see* FED. R. EVID. 703. But it is not his place to tell the jury who to believe and which version is, in his opinion, correct.

There is a second proposed use of Mr. MacNeill's expert analysis. He also expresses a view of how the accident took place based on the rotation of the propeller and the exact nature of Mr. Hinton's injuries. *MacNeill Accident Reconstruction* at 15. This testimony survives Mr. Hinton's challenge because Mr. MacNeill's analysis will "help the trier of fact to understand the evidence or to

3

determine a fact in issue." FED. R. EVID. 702; *see United States v. Rosa-Carino*, 615 F.3d 75, 81 (1st Cir. 2010).

Beyond these examples, the Court will not perform an exegesis on Mr. MacNeill's nineteen-page report and delineate which opinions are admissible and which are not. The attorneys for the parties are experienced and knowledgeable and are certainly aware of the rules of evidence. The Court expects them to follow the rules.

## C. Demonstrative Exhibits

Mr. Hinton objects to a series of demonstrative exhibits attached to Mr. MacNeill's report. *Pl.'s Mot.* Ex. 3 (*Demonstrative Exs.*). Mr. Hinton observes that the demonstrative exhibits contain:

> a diagram of the path of the boat which accepts the testimony of one witness (Christopher Sprague) over another, diagrams of where people were positioned in the boat which rejects the testimony of some witnesses, such as Justin Hinton, who placed himself quite close to his father when his father stepped over the swim platform, photographs of how Mr. Hinton could have achieved his intended purpose without grabbing the ladder (using an individual whose identity remains unclear), a chart of propeller-related fatalities for all vessels that is, at best, a learned treatise . . . a comparative chart of the relative risks of various activities, beginning with flying and ending with recreational boating. . . . There are other photos of the boat which are accompanied by arguments such as "boat NOT defective or unreasonably dangerous" or "11 years later, the ladder still does what it was designed to do."

*Pl.'s Mot.* at 3. OMC has not responded to this part of Mr. Hinton's memorandum. *Defs.' Opp'n* at 1-9.

"It is today increasingly common to encounter the use of demonstrative aids throughout a trial. Demonstrative aids take many forms; including duplicates,

4

models, maps, sketches and diagrams, and computer-generated pedagogic aids." *United States v. Burt*, 495 F.3d 733, 740 (7th Cir. 2007) (quoting Kenneth S. Broun, MCCORMICK ON EVIDENCE § 212 (2006)). "The decision to allow demonstrative aids rests in the discretion of the district judge." *Id.* Although there is no federal rule of evidence expressly on the use of illustrative aids at trial, the state of Maine has a specific rule addressing demonstrative aids. ME. R. EVID. 616. It provides that the "court in its discretion may condition, restrict or exclude the use of any illustrative aid to avoid the risk of unfair prejudice, surprise, confusion or waste of time." ME. R. EVID. 616(b). Maine Rule 616(b) effectively clarifies that the provisions of Rule 403 apply to demonstrative exhibits even though the proffering party does not seek to admit them into evidence. *See* FED. R. EVID. 403.

The Court rejects Mr. Hinton's objections to the illustrations which depict where the people were located in the boat and how the accident, in Mr. MacNeill's view, occurred. The drawings illustrate Mr. MacNeill's assumptions of a version of the evidence and so long as he does not tell the jury what to believe, he is free to assume in reconstructing the accident one witness's version over another's.

The Court is more concerned about a number of the other demonstrative exhibits. The photographs depicting how a person on the swim ladder could have gripped the handrail are unobjectionable but the Court is chary about the editorial comments—"Right hand securely gripping stern rail" and "Both hands securely

5

gripping stern rail." Mr. MacNeill can refer to the photographs and provide his own explanation without the added emphasis.[2]

The Court is not inclined to allow Mr. MacNeill to testify about propeller-related fatalities or the risk of fatality with various activities. Although he was severely injured, fortunately Mr. Hinton did not die as a result of his encounter with the propeller and the Court is unclear about the relevance of propeller death statistics, except to emphasize to the jury that a propeller under power is extremely dangerous, which is something the jury would know without being told by Mr. MacNeill. Furthermore, Mr. Hinton not only did not die as a result of this accident, but also did not die of flying, cancer, construction work, or any of the Defendants' other charted activities. The Court cannot understand why this testimony would be more probative than prejudicial.

Through Mr. MacNeill, OMC plans to present a demonstrative exhibit in the form of a textual slide that highlights OMC's claim that certain facts are undisputed by the Plaintiff. The Court will not allow OMC to present this exhibit unless the Plaintiff agrees that those highlighted facts are in fact undisputed.

The Court will not allow OMC to present demonstrative exhibits that say in large black lettering: **Boat NOT defective or unreasonably dangerous**; **Handholds & Swim platform NOT defective or unreasonably dangerous**; **Boarding ladder NOT defective or unreasonably dangerous**; **Ladder and securing strap ARE capable of performing the tasks for which they were**

---

[2] The Court is not prohibiting any marking up of the photograph but this description belongs in a closing argument, not an expert's testimony.

**designed**; **11 Years Later, The Ladder Still Does What It Was Designed To Do**; **Snap & securing strap broke through unreasonable misuse**; **The Ladder Performed Its Intended Function in 2000 and Continues to Do So**. If Mr. O'Sullivan wishes to refer to these demonstrative aids in his closing argument, he may do so. But he may not use them as illustrative aids to question Mr. MacNeill.

Finally, if the ANSI standards are properly placed before the jury by expert testimony, Mr. MacNeill may refer to the highlighted ANSI standards in OMC's set of demonstrative aids.

## III. CONCLUSION

The Court DENIES in part and GRANTS in part Plaintiff's Motion to Exclude or Substantially Limit the Test. of Robert MacNeill and Demonstrative Exhibits Connected with that Testimony (Docket # 154).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 25th day of January, 2012