UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL HINTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OUTBOARD MARINE )<br>CORPORATION, et al., )<br>)<br>Defendants. ) | 1:09-cv-00554-JAW |

### AMENDED[1] ORDER ON MOTION TO EXCLUDE EVIDENCE OF COMPARATIVE NEGLIGENCE

As trial approaches, the Plaintiff in this products liability action moves *in limine* to exclude the Defendants' evidence of "mere" comparative negligence. Specifically, he asks that the Defendants not be permitted to discuss either the Plaintiff's vaulting over the boat's transom or his presence on the boat's swim platform. In addition, the parties disagree as to whether admiralty or state of Maine law applies. Finally, the Plaintiff asks for a ruling as to the extent to which comparative negligence applies to his products liability case.

The Court declines to cut up the chronological narrative by allowing the jury to hear some but not all of the events. The Court concludes that because admiralty

---

[1] On page 4 of its Order dated January 27, 2012 granting in part and denying in part the Plaintiff's *Motion in Limine* to Exclude Evidence of Mere Comparative Negligence (Docket # 172), the Court cites *Austin v. Raybestos-Manhattan, Inc.*, 471 A.2d 280 (Me. 1984) as "adopting the comparative negligence principles found in the Restatement (Second) of Torts § 401A, comment n." That sentence should have read: "adopting the comparative negligence principles found in the Restatement (Second) of Torts § 402A, comment n." This Amended Order corrects that reference to the Restatement (Second) of Torts § 402A.

and Maine law are largely congruent, it is unnecessary to determine which applies, and that any differences can be addressed post-trial depending on the jury's response to special interrogatories. Finally, the Court concludes that the Defendants may not assert as comparative negligence the Plaintiff's failure to discover the alleged defect before the accident but that they may allege that the Plaintiff's actions after the immediate impact of the alleged defect either amounted to comparative negligence or were the proximate cause of his injuries.

### I.     STATEMENT OF FACTS

On January 6, 2012, Michael Hinton moved to exclude evidence of his comparative negligence. *Pl.'s Second Mot.* in Limine *To Exclude Evid. of Mere Comparative Negligence* (Docket # 143) (*Pl.'s Mot.*). Outboard Marine Corporation and OMC Recreational Boat Group, Inc. (collectively OMC) responded on January 13, 2012. *Def. Outboard Marine Corporation and OMC Recreational Boat Group, Inc. Resp. to Pl.'s Second Mot.* in Limine *to Exclude Evid. of Mere Comparative Negligence* (Docket # 156) (*Defs.' Opp'n*).

This accident occurred when Michael Hinton, a passenger in a speedboat, decided to retrieve his son's hat, which had blown off and was afloat in the ocean. Mr. Hinton got himself over the transom and onto a swim platform at the stern of the boat, and leaned against a swim ladder in an effort to retrieve the hat. The grommet anchoring the nylon strap, which was holding the swim ladder to the transom, broke and Mr. Hinton tumbled into the ocean. As the boat operator backed up the speedboat to retrieve him, Mr. Hinton swam forward toward the

stern of the boat, where one of his legs made contact with the moving propeller and was severely injured. Mr. Hinton claims that by manufacturing a defective swim ladder, the Defendants violated 14 M.R.S. § 221, the Maine products liability statute, and are strictly liable for his injuries.

With trial scheduled, Mr. Hinton filed a motion *in limine* with two facets: (1) a demand that OMC not be allowed to describe him as having vaulted over the transom onto the swim platform, and (2) a demand that evidence that Mr. Hinton was on the swim platform be excluded.

## II.  DISCUSSION

### A.  Michael Hinton's Vaulting and Presence on the Swim Platform

The Court rejects Mr. Hinton's demand that OMC be forbidden from discussing his vaulting over the transom and his presence on the swim platform. At a most basic level, the jury is entitled to know how this accident happened. Did Mr. Hinton slowly enter onto the swim platform and gently push against the swim ladder or did he vault over the transom and carried by his momentum, lean heavily against the swim ladder? Exactly how this case could be tried without mentioning that Mr. Hinton was on the swim platform is a mystery. In any event, the Court will not impose the artificial restraints on the evidence and argument that Mr. Hinton seeks.

### B.  Admiralty or State Law

The parties strongly disagree about whether state or admiralty law should apply. Mr. Hinton argues that state of Maine products liability law should apply;

3

OMC argues that admiralty law should.  First as to the substance of products liability law, it makes no difference.  To prove a case of products liability in admiralty law, a plaintiff must prove that: "(1) that the defendant sold or manufactured the product; (2) that the product was unreasonably dangerous or was in a defective condition when it left the defendant's control; and (3) that the defect resulted in injury to the plaintiff."  1 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 5-7 (3d ed. 2001).  On the elements necessary to prove a products liability case, Maine law is consistent with admiralty law.  14 M.R.S. § 221.

The general principles of comparative negligence are the same too.  In *Austin v. Raybestos-Manhattan, Inc.*, 471 A.2d 280 (Me. 1984), the Maine Supreme Judicial Court interpreted the combined effect of 14 M.R.S. section 156 and section 221 as adopting comparative negligence principles found in the Restatement (Second) of Torts § 402A, comment n.  *Id.* at 287-88.  The Court is not convinced that there is any daylight between admiralty law and Maine state law in the substantive law of products liability and comparative negligence principles.

There is, however, one difference.  Under Maine law, if a plaintiff's negligence is equal to or greater than the defendant's negligence, the plaintiff"s claim is barred.  14 M.R.S. § 156 ("If such claimant is found by the jury to be equally at fault, the claimant may not recover").  Under admiralty law, comparative negligence appears to be a pure comparative negligence, allowing the plaintiff to recover even if he is more than fifty percent responsible.  *See* Schoenbaum § 5.7; *United States v. Reliable Transfer Co.*, 421 U.S. 397 (1975).  Thus, the Court is confused as to why

4

Mr. Hinton is arguing for rules harsher to the plaintiff and OMC for rules more generous to the plaintiff.

In any event, the Court need not resolve the question of which law applies since if the jury finds any comparative negligence, it can be directed to supply a percentage. Only if the percentage of comparative negligence is greater than fifty percent will the answer to whether admiralty law or state of Maine law become necessary. The Court will discuss with counsel the appropriate jury instructions and special verdict form to cover these contingencies.

### C. Comparative Negligence

Quoting *Austin v. Raybestos-Manhattan*, Mr. Hinton requests that any argument about his comparative negligence be limited to whether he assumed the risk of injury by "voluntarily and unreasonably proceeding to encounter a danger known to him." *Pl.'s Mot.* at 2-3.

The Court analyzes the status of Maine law because—as just discussed—it is congruent with the federal common law. Generally, under Maine's comparative negligence statute, a person suffering damage "as a result partly of that person's own fault" may still proceed against a defendant, but his recovery will be limited by his own "share in the responsibility for the damage." 14 M.R.S. § 156. Maine law defines the plaintiff's fault as "negligence, breach of statutory duty or other act or omission that would, apart from [section 156], give rise to the defense of contributory negligence." 14 M.R.S. § 156; *Austin*, 471 A.2d at 283. "Contributory negligence is generally unreasonable behavior by a plaintiff before or concurrent

5

with the injury imposed by the defendant." *Walter v. Wal-Mart Stores, Inc.*, 748 A.2d 961, 969-70 (Me. 2000) (describing the difference between contributory negligence and the doctrine of mitigation of damages as a "temporal one").

The Court agrees with Mr. Hinton that under Maine law, comparative fault "does not apply to strict liability claims where the plaintiff's only alleged negligence is failure to discover the defect in the product or to guard against the possibility of its existence." Donald G. Alexander, MAINE JURY INSTRUCTION MANUAL § 7-25 (4th ed.). At the same time, as the *Austin* Court concluded, "contributory negligence of a form commonly passing under the name of assumption of the risk, consisting in voluntarily and unreasonably proceeding to encounter a known danger, does constitute such 'fault.'" *Austin*, 471 A.2d at 281; *Prentiss & Carlisle Co. v. Koehring-Waterous Div. of Timberjack, Inc.*, 972 F.2d 6, 10 (1st Cir. 1992).

The facts present two distinct periods: (1) the time before Mr. Hinton went into the ocean and (2) the time after he did so. Before the accident, the parties agree that Mr. Hinton was safely within the interior of a speedboat under power and on the water. The first series of acts occurred when Mr. Hinton went over the transom, stood on the swim platform, hung onto a swim ladder, placed his weight on the swim ladder, and bent down to retrieve the hat. At this point, the swim ladder strap snapped and Mr. Hinton suddenly and without warning found himself in the water. As to these facts, OMC has not proposed that Mr. Hinton knew that the swim ladder strap was defective and that he proceeded anyway. To do so would effectively blame the consumer for the unknown defect, which Maine law prohibits.

6

OMC may not, therefore, argue that Mr. Hinton put himself in a risky position by standing on the swim platform and leaning against an OMC product.

This, however, is not the end of the story. A second series of unfortunate events began when Mr. Hinton entered the water. He was not directly injured by the fall. But once Mr. Hinton fell into the water and retrieved the hat, he proceeded uninjured toward the rear of the speedboat—where the propeller was whirling—and attempted to re-board the vessel. At this point, Mr. Hinton's actions arguably constituted contributory negligence under common law. In other words, OMC can argue that in approaching the stern Mr. Hinton "assumed the risk" of injury by "voluntarily and unreasonably proceeding to encounter a known danger." *Austin*, 471 A.2d at 286.

Comparative negligence is not the only way Mr. Hinton's actions after he landed in the water could come before the jury. OMC has the right to argue proximate or intervening cause. The defect in the ladder at least caused Mr. Hinton to fall unexpectedly into the water. However, because Mr. Hinton was not injured by his fall, OMC has the right to assert that but for his subsequent negligence (and the negligence of the boat operator), he would not have been injured. Mr. Hinton has a corresponding right to contend that the defective ladder began a series of causally-related events that led to his injury.

In accordance with Maine law, OMC will not be allowed to argue to the jury that Mr. Hinton was negligent because he failed to discover the defect in the swim

ladder or to guard against the possibility of its existence.[2] For events after the ladder strap broke, OMC will be allowed to present evidence and to argue that Mr. Hinton was otherwise negligent and that his negligence was a proximate or intervening cause for his injuries.

### III.   CONCLUSION

The Court GRANTS in part and DENIES in part the Plaintiff's Second Motion *in Limine* to Exclude Evidence of Mere Comparative Negligence (Docket # 143).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 30th day of January, 2012

---

[2] Of course, if OMC has evidence to support the contention that Mr. Hinton was aware of the defect in the swim ladder and encountered that risk regardless of the defect, OMC will be allowed to present that evidence and to make that argument.

8